1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON, | Case No. 18-CV-04150-LHK |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS** |
| v. | Re: Dkt. No. 51 |
| MEDVILL 1, LLC, | |
| Defendant. | |

Plaintiff Scott Johnson alleges that Defendant Medvill 1, LLC violated the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 *et seq.*) and California's Unruh Civil Rights Act (Cal. Civ. Code §§ 51–53). Before the Court is Defendant's motion to dismiss Plaintiff's first amended complaint. ECF No. 51-1 ("Mot."). Having considered the parties' submissions; the relevant law; and the record in this case, the Court DENIES Defendant's motion to dismiss.[1]

---

[1] Defendant's motion to dismiss contains a notice of motion paginated separately from the memorandum of points and authorities in support of the motion. ECF No. 51. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities should be contained in one document with the same pagination.

1

Case No. 18-CV-04150-LHK
ORDER DENYING MOTION TO DISMISS

## I.     BACKGROUND

### A. Factual Background

Plaintiff is a California resident with physical disabilities. FAC ¶ 1. He is a level C-5 quadriplegic who uses a wheelchair and specially equipped van for mobility. *Id.* Plaintiff is also a serial ADA litigant who has filed over 1100 lawsuits in this district since October 2015. *See* Mot. Exh. D, ECF No. 51-2 (results of search for cases).[2] In this case, Plaintiff claims that Defendant has violated—and continues to violate—the ADA and the Unruh Civil Rights Act (Cal. Civ. Code §§ 51–53). FAC ¶¶ 34–49. Specifically, Plaintiff alleges that Defendant operates an acupuncture clinic in Saratoga, California that is inaccessible to persons with disabilities. *Id.* ¶ 17.

Plaintiff alleges that during three visits to the clinic in May 2018 and June 2018, he encountered three barriers at the clinic. *Id.* ¶¶ 9, 24. Plaintiff further alleges that those barriers persist to this day. First, though the clinic has reserved a parking spot for persons with disabilities, that parking spot lacks a "compliant access aisle." *Id.* ¶ 13. Second, "the path of travel to the [c]linic entrance requires a person to navigate steps for which there is no ramp." *Id.* ¶ 20. Third, "the entrance door hardware at the [c]linic has a traditional style round knob that requires tight grasping and twisting of the wrist to operate." *Id.* ¶ 23.

Moreover, Plaintiff alleges that he "intends to return to the clinic" for two reasons. *Id.* ¶ 32. First, the clinic is "an excellent choice for seeking acupuncture care during" Plaintiffs' many trips to the federal courthouse in San Jose, California, which is about a 10-mile drive from the clinic.

---

[2] Defendant filed an unopposed request for judicial notice in support of its motion to dismiss. ECF No. 51-2 ("RJN"). Defendant requests that the Court take notice of four exhibits. Exhibit A is Plaintiff's public profile and address from the State Bar of California's website. Exhibit B is a public statement from the California Secretary of State's website. Exhibit C is a screenshot of Google Maps directions between two addresses. Lastly, Exhibit D comprises search results from this district's ECF system. All these exhibits are proper subjects of judicial notice. *See, e.g.*, *United States v. Perea-Rey*, 680 F.3d 1179, 1182 (9th Cir. 2012) (taking judicial notice of Google map); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of "court filings and other matters of public record"). Further, Plaintiff does not oppose Defendant's request for judicial notice. Thus, the Court GRANTS Defendant's request for judicial notice.

Case No. 18-CV-04150-LHK
ORDER DENYING MOTION TO DISMISS

*Id.* ¶ 30. Plaintiff anticipates many visits to the courthouse for mediations, conferences, and other court appearances. *Id.* In fact, "Plaintiff intends to make an appointment at the [c]linic immediately following an inspection of the [c]linic's premises for accessibility," so long as "Plaintiff can confirm removal of the barriers" to access. *Id.* ¶ 31.

Second, "Plaintiff also intends to return to the Clinic to determine compliance with the disability access laws." *Id.* ¶ 32.

## B. Procedural History

Plaintiff filed his first complaint against Defendant on July 12, 2018. ECF No. 1. Because Plaintiff asserts an ADA claim, this district's General Order No. 56 automatically provides that the parties shall complete a joint site inspection no later than 60 days after service of the complaint. *See* General Order No. 56 ¶ 7 (N.D. Cal. June 21, 2005), *as amended* Jan. 1, 2020, https://cand.uscourts.gov/wp-content/uploads/general-orders/GO-56.pdf. On February 26, 2019, the parties belatedly stipulated to extending the deadline for the joint site inspection from October 24, 2018 to March 12, 2019. ECF No. 16. The Court granted the stipulation on the condition that no further continuances will be granted. ECF No. 17.

On June 1, 2020, Defendant moved to dismiss Plaintiff's first complaint. ECF No. 43. Defendant argued that Plaintiff lacks standing to bring the instant suit because Plaintiff failed to sufficiently allege an intent to return to the property and/or that Plaintiff was deterred from the property. ECF No. 47 at 1. Plaintiff failed to file an opposition to Defendant's motion. Thus, on June 24, 2020, the Court dismissed Plaintiff's complaint with leave to amend. *Id.*

On June 25, 2020, the Court stayed this case in light of the unopposed standing issues raised by Defendant. ECF No. 48 at 2. The Court instructed that despite the stay, Plaintiff still had to "amend the complaint within the 30-day deadline set by the Court's June 24, 2020 order granting Defendant's motion to dismiss, and the parties may litigate another motion to dismiss, if necessary." *Id.*

On July 14, 2020, Plaintiff filed the first amended complaint. ECF No. 50. On July 28, 2020, Defendant again moved to dismiss on the ground that Plaintiff lacks standing. ECF No. 51.

United States District Court
Northern District of California

On August 10, 2020, Plaintiff filed his opposition to Defendant's instant motion to dismiss. ECF No. 52. On August 17, 2020, Defendant filed a reply supporting the instant motion to dismiss. ECF No. 54.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction. Although lack of "statutory standing" requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 808 (9th Cir. 2015) ("Unlike Article III standing, however, 'statutory standing' does not implicate our subject-matter jurisdiction." (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014))); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). A Rule 12(b)(1) jurisdictional attack may be factual or facial. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

"In a facial attack," on the other hand, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to

1  invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

2  **B. Leave to Amend**

3  If a court determines that a complaint should be dismissed, it must then decide whether to

4  grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

5  "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

6  15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

7  *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks

8  omitted). When dismissing a complaint for failure to state a claim, "a district court should grant

9  leave to amend even if no request to amend the pleading was made, unless it determines that the

10  pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal

11  quotation marks omitted).

12  Accordingly, leave to amend generally shall be denied only if allowing amendment would

13  unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has

14  acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). At the

15  same time, a court is justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to

16  cure deficiencies by amendments previously allowed." *See Carvalho v. Equifax Info. Servs., LLC*,

17  629 F.3d 876, 892 (9th Cir. 2010). Indeed, a "district court's discretion to deny leave to amend is

18  particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v.*

19  *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quotation marks omitted).

20  **III.  DISCUSSION**

21  Plaintiff claims that Defendant violated the ADA (42 U.S.C. § 12101 *et seq.*) and the

22  Unruh Civil Rights Act (Cal. Civ. Code §§ 51–53). FAC ¶¶ 34–49. For these alleged violations,

23  Plaintiff seeks injunctive relief and damages. *Id.* at 9.

24  Defendant moves to dismiss Plaintiff's claims on two grounds under Federal Rule of Civil

25  Procedure 12(b)(1). First, Defendant argues that Plaintiff lacks Article III standing to bring an

26  ADA claim. *See Mot.* at 7–11. Second, Defendant argues that the Court lacks supplemental

27  jurisdiction over Plaintiff's Unruh Civil Rights Act claim or should decline jurisdiction in any

28

5

1   event. *See* Mot. at 12–14. The Court addresses each of Defendant's arguments in turn.

2   **A.  At this stage, Plaintiff has Article III standing to bring an ADA claim.**

3       The "Supreme Court has instructed [courts] to take a broad view of constitutional standing

4   in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the

5   primary method of obtaining compliance with the Act.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*,

6   631 F.3d 939, 946 (9th Cir. 2011) (en banc) (quoting *Doran v. 7–Eleven, Inc.,* 524 F.3d 1034, 1039

7   (9th Cir. 2008)). "[T]o establish standing to pursue injunctive relief, which is the only relief

8   available to private plaintiffs under the ADA, [Plaintiff] must demonstrate a 'real and immediate

9   threat of repeated injury' in the future." *Id.* (footnote omitted) (quoting *Fortyune v. Am. Multi–*

10  *Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).

11      Defendant argues that Plaintiff cannot show a real and immediate threat of repeated injury.

12  Specifically, Defendant argues that although Plaintiff previously suffered an injury-in-fact,

13  Plaintiff will not suffer *repeated* injury because he neither (1) intends to return to Defendant's

14  clinic; nor (2) is deterred from going to the clinic. *See* Mot. at 7–8.

15      Ninth Circuit precedent forecloses Defendant's argument. Even at summary judgment—

16  where Plaintiff's burden of showing standing is greater than at the pleading stage—relatively

17  "minimal allegations" support ADA standing. *Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir.

18  2009) (per curiam) (reversing dismissal for lack of standing at summary judgment); *see also Lujan*

19  *v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (discussing plaintiff's greater burden of showing

20  standing at summary judgment). Namely, "[a]llegations that a plaintiff [1] has visited a public

21  accommodation on a prior occasion and [2] is currently deterred from visiting that accommodation

22  by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Wilson*, 563 F.3d

23  at 980 (quoting *Doran*, 524 F.3d at 1041).

24      Here, Plaintiff makes allegations that the Ninth Circuit has held sufficient. Plaintiff alleges

25  that he has visited Defendant's clinic three times: twice in May 2018 and once in June 2018. FAC

26  ¶ 9. Plaintiff also alleges that "until Plaintiff can confirm removal of the barriers" to his access,

27  "he is deterred from" making an appointment at the clinic "immediately following an inspection of

28

6

United States District Court
Northern District of California

the [c]linic's premises for accessibility by way of General Order 56." *Id.* ¶ 31. Thus, Plaintiff has adequately pled an imminent ADA injury sufficient to support Article III standing.

Indeed, Plaintiff's allegations are more than enough for standing. Two Ninth Circuit ADA cases are especially instructive. In *Doran*, plaintiff Jerry Doran sued a 7-Eleven store located in Anaheim, California about 550 miles from his home. *Doran*, 524 F.3d at 1038. Doran alleged that he would visit the store in the future because he "plan[ned] to visit Anaheim at least once a year on his annual trips to Disneyland." *Id.* at 1040. Despite Doran's distance from the store and the infrequency of his visits to Anaheim, the Ninth Circuit held that Doran had standing, thereby reversing the district court's summary judgment for 7-Eleven. *Id.* at 1049.

Plaintiff's case for standing is stronger than Doran's. Even by Defendant's estimation, Plaintiff resides 137 miles from Defendant's clinic—less than one-fourth the distance between Doran and the 7-Eleven store. Mot. Exh. C. Plaintiff also alleges that he is near the clinic "on a regular and ongoing basis." FAC ¶ 30. Specifically, from January 2019 through February 2020, Plaintiff was in San Jose at least 84 times. *Id.* "Several of these visits and a number of anticipated future visits" are to the federal courthouse, which is about 10 miles from the clinic. *Id.* Plaintiff further alleges that the clinic is "an excellent choice for seeking acupuncture care during these trips." *Id.* Thus, compared to Doran, Plaintiff resides closer to—and more frequently visits the vicinity of—the public accommodation that he is suing under the ADA.

In *Civil Rights Education*, plaintiffs sued several hotels for failing to provide wheelchair-accessible shuttle services. *See Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1097 (9th Cir. 2017) (describing named plaintiffs' lawsuits). The hotels argued that plaintiffs lacked standing because (1) "[plaintiffs] did not actually visit the hotels"; and (2) "[plaintiffs] are motivated to visit the hotels only by their desire to test them for ADA compliance." *Id.* at 1099. The Ninth Circuit disagreed. As to the hotels' first argument, the Ninth Circuit held that a plaintiff can show standing even if he has not visited a public accommodation before. A plaintiff need only allege that that he "intend[s] to visit the relevant [accommodations], but ha[s] been deterred from doing so by the [accommodation]s' noncompliance with the ADA." *Id.* As for the hotels' second

United States District Court
Northern District of California

1    argument, the Ninth Circuit held that plaintiffs' "motivation for visiting the [accommodations] is

2    irrelevant." *Id.* at 1101. A motivation to test ADA compliance can still support standing. *Id.*

3         Plaintiff's case for standing is stronger here too. Plaintiff has visited Defendant's clinic

4    three times and personally encountered barriers to his access. FAC ¶¶ 9, 24. Moreover, Plaintiff

5    not only "intends to return to the [c]linic to determine [its] compliance with the disability access

6    laws," but also "intends to make an appointment at the [c]linic" for acupuncture care. *Id.* ¶¶ 30,

7    31. Thus, compared to the plaintiffs in *Civil Rights Education*, Plaintiff has (1) more personal

8    knowledge of the alleged barriers to accessibility and (2) a non-litigation reason for visiting the

9    public accommodation in the future.

10        Defendant's response to these Ninth Circuit precedents is unpersuasive. Defendant relies

11   on a 2012 district court case that found that Plaintiff lacked standing to bring an ADA claim. *See*

12   Mot. at 8–13 (relying on *Johnson v. Overlook at Blue Ravine, LLC*, No. 2:10-CV-02387-JAM,

13   2012 WL 2993890 (E.D. Cal. July 20, 2012)). In *Overlook at Blue Ravine*, the court ruled against

14   Plaintiff after balancing four factors set forth by another district court: "(1) the proximity of

15   defendant's business to plaintiff's residence, (2) plaintiff's past patronage of defendant's business,

16   (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near

17   defendant." *Overlook at Blue Ravine*, 2012 WL 2993890, at *3 (quoting *Lema v. Comfort Inn,*

18   *Merced*, 1:10-cv-00362-SMS, 2012 WL 1037467 at *5 (E.D. Cal. Mar. 27, 2012)).

19        Here, Defendant argues that these factors show that Plaintiff lacks standing. In particular,

20   Defendant argues that Plaintiff lacks either a credible intent or definitive plans to return to

21   Defendant's clinic. In Defendant's view, Plaintiff's stated intent to return to the clinic is insincere

22   because Plaintiff has filed more than 1100 lawsuits in this district since October 2015. Mot. at 10.

23   As for Plaintiff's plans to return, Defendant argues that because Plaintiff has been indicted for

24   federal tax fraud related to his settlements of prior ADA litigation, Plaintiff will be too "busy

25   defending against the criminal charges" to visit the clinic. *Id.* at 12 (citing *United States v. Scott*

26   *Norris Johnson*, No. 2:19-cr-00088-JAM (filed May 23, 2019 in E.D. Cal.)).

27        The Court is unpersuaded for three reasons. First, the four-factor test from *Overlook at*

28

Case No. 18-CV-04150-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

*Blue Ravine* is not a controlling test for assessing Plaintiff's standing. If anything, intervening Ninth Circuit precedent has lessened the significance of three *Overlook at Blue Ravine* factors. In *Civil Rights Education*, the Ninth Circuit (1) held that the second factor (past patronage) is unnecessary for standing; and (2) ignored the first and fourth factors (proximity of business and frequency of travel). *See Civil Rights Educ. & Enf't Ctr.*, 867 F.3d at 1099 ("The Named Plaintiffs were not required to visit the hotels."). The Ninth Circuit found standing based on the third factor (definitiveness of plaintiffs' plans to return) alone. The *Civil Rights Education* plaintiffs merely needed to allege: (1) "that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA"; and (2) "that they will visit the hotels when the non-compliance is cured." *Id.* Similarly here, Plaintiff alleges that he "intends to make an appointment at the [c]linic," but "is deterred from doing so" until he "can confirm removal of the barriers." FAC ¶ 31.

Second, though it seems implausible that Plaintiff plans to visit the clinic along with the other 1100+ public accommodations that he has sued, controlling precedent compels this Court to disregard this implausibility. In *D'Lil*, the Ninth Circuit reversed a district court's finding that plaintiff Hollynn D'Lil lacked standing. *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1039 (9th Cir. 2008). The district court had found—after briefing and an evidentiary hearing—that "D'Lil failed to provide evidence of her intent to return." *Id.* The district court further "not[ed] concerns about the credibility of D'Lil's professed desire to return in light of her involvement in [approximately sixty] prior ADA suits." *Id.* Over a dissent, the Ninth Circuit held that "because the district court focused on D'Lil's history of ADA litigation as a basis for questioning the sincerity of her intent to return to the Best Western Encina, we reject its purported adverse credibility determination." *Id.* at 1040. The Ninth Circuit explained that "[f]or the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Id.* (quoting *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th Cir. 2007)).

Case No. 18-CV-04150-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    Thus, the Court cannot "rel[y] on [Plaintiff]'s prior ADA suits to question the sincerity of

2    h[is] intent to return to" Defendant's clinic. *Id.* The Court instead relies on whether Plaintiff has

3    "identified specific reasons" for visiting the clinic and the area around it. *Id.* Here, Plaintiff has

4    identified specific reasons at the pleading stage. *See, e.g.*, FAC ¶ 30 (describing acupuncture care

5    during trips to San Jose courthouse).

6    Third, the Court turns to Defendant's argument that Plaintiff will be too "busy defending

7    against [] criminal charges" to visit the clinic. Mot. at 12. Defendant fails to identify any

8    authority—and the Court is aware of none—that supports Defendant's argument, particularly at

9    the pleading stage. In fact, the status of Plaintiff's criminal case suggests that Plaintiff will have

10   several months to visit Defendant's clinic again. The criminal case's trial confirmation hearing is

11   set for June 15, 2021, and trial is set for August 16, 2021. *See* Stip. Regarding Trial Date ¶ 5(f),

12   *Johnson*, No. 2:19-cr-00088-JAM (June 8, 2020), Dkt. No. 28. Until then, Plaintiff is released on

13   bond without any travel restrictions. *Id.* at Dkt. Nos. 7 & 8 (describing terms of Plaintiff's release).

14   Thus, Plaintiff has about six to eight months to "make an appointment at the [c]linic immediately

15   following an inspection of the [c]linic's premises." FAC ¶ 31. Given the expansive standing

16   doctrine that this Court must apply, the Court credits Plaintiff's assertion that he will return to the

17   clinic.

18   However, because Plaintiff seeks injunctive relief in addition to damages, the Court notes

19   that Plaintiff's pending criminal charges may be relevant to the equitable defense of unclean

20   hands. Whether a plaintiff has unclean hands is a factor that courts consider in deciding whether to

21   grant equitable relief. *See, e.g.*, *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944)

22   (analyzing the doctrine of unclean hands); *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604

23   F.2d 852, 863 (5th Cir. 1979) (explaining that the doctrine is unrelated to standing). A plaintiff has

24   unclean hands when he has committed "some unconscionable act" that "has immediate and

25   necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone*

26   *Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933).

27   Plaintiff's criminal charges arise from alleged underreporting of income from lawsuits

28

10

Case No. 18-CV-04150-LHK
ORDER DENYING MOTION TO DISMISS

under the ADA, Unruh Civil Rights Act, and California Disabled Persons Act. *See* Indictment ¶¶ 8,

14, *Johnson*, No. 2:19-cr-00088-JAM (May 23, 2019) (grand jury's allegations). Yet Plaintiff also

seeks equitable relief (plus damages) under the ADA and Unruh Civil Rights Act here. Thus,

Plaintiff may have committed an unconscionable act related to the equity he seeks in this case.

Even so, it would be premature for the Court to decide this remedial question without briefing or

more information on the criminal allegations against Plaintiff. Accordingly, the Court merely holds

that Plaintiff has Article III standing to bring his ADA claim at this point.

**B.   This case lacks "exceptional circumstances" that would allow the Court to decline supplemental jurisdiction over Plaintiff's Unruh Civil Rights Act claim.**

Defendant also argues that Plaintiff's Unruh Civil Rights Act claim ("Unruh claim")

should be dismissed for lack of jurisdiction. Specifically, Defendant argues that the Court lacks

supplemental jurisdiction over the Unruh claim or should decline jurisdiction in any event. *See*

Mot. at 12–14. The Court disagrees for two reasons.

First, as explained in the prior Section, the Court has jurisdiction over Plaintiff's ADA

claim, which arises from the same nucleus of operative facts as the Unruh claim. *See* Mot. at 12

(arguing that the Unruh claim is "derivative" of the ADA claim). Thus, the Court has supplemental

jurisdiction over the Unruh claim unless the Court "decline[s] to exercise supplemental

jurisdiction" under four enumerated grounds. 28 U.S.C. § 1367(c) (listing grounds).

Second, no ground for declining jurisdiction applies here. Defendant raises only one

ground, which is that "district courts may decline to exercise supplemental jurisdiction over a

claim . . . if— . . . in *exceptional circumstances*, there are other *compelling reasons* for declining

jurisdiction." *Id.* § 1367(c)(4) (emphasis added); *see* Mot. at 13–14. Defendant argues that the

Unruh claim meets this strict standard because Plaintiff is a "high-frequency litigant[]" who has

"cherry-pick[ed] [his] forum." Mot. at 14.

However, "the cases are numerous in which it has been decided that the motives of

litigants in seeking Federal jurisdiction are immaterial." *Wheeler v. City & Cty. of Denver*, 229

U.S. 342, 351 (1913). Indeed, three courts in this district have analyzed whether to decline

Case No. 18-CV-04150-LHK
ORDER DENYING MOTION TO DISMISS

supplemental jurisdiction over an Unruh claim—and all three have exercised jurisdiction. *See Castillo-Antonio v. Hernandez*, No. 19-CV-00672-JCS, 2019 WL 2716289, at *9 (N.D. Cal. June 28, 2019) (detailing intra-circuit split among district courts and exercising supplemental jurisdiction); *Johnson v. Mariani*, No. 17-CV-01628-BLF, 2017 WL 2929453, at *4 (N.D. Cal. July 10, 2017) (rejecting "forum shopping" argument against the same Plaintiff here); *cf. Miller v. Ladd*, No. CV 08-5595 NJV, 2009 WL 10695883, at *2 (N.D. Cal. July 29, 2009) (exercising jurisdiction, partly because "[p]laintiff does not appear to be forum-shopping, and she has filed only this one ADA action"). At this time, the Court declines to depart from the reasoned decisions of its sister courts. Thus, the Court exercises supplemental jurisdiction over Plaintiff's Unruh Civil Rights Act claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: December 28, 2020

LUCY H. KOH
United States District Judge

Case No. 18-CV-04150-LHK
ORDER DENYING MOTION TO DISMISS